**IT IS ORDERED as set forth below:**



Date:  April 26, 2017

_____

**W. Homer Drake
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | : | **CASE NUMBER** |
| | : | |
| ORA LEE OGDEN, | : | 16-12280-WHD |
| | : | |
| | : | IN PROCEEDINGS UNDER |
| | : | CHAPTER 13 OF THE |
| Debtor. | : | BANKRUPTCY CODE |

**ORDER**

The above-styled case came before the Court for a hearing on confirmation of the Debtor's Second Amended Plan on March 16, 2017, at 9:10 AM.  At the hearing, the Chapter 13 Trustee raised an objection to confirmation alleging that the Debtor had failed to satisfy the good-faith requirement of § 1325(a)(3) of the Bankruptcy Code.  After hearing argument from counsel at the hearing, the Court requested briefing from both parties.  Having considered the record in this case, the

arguments of counsel, and the briefs filed with the Court, the Court concludes as set forth below.

## Discussion

The Debtor filed this case on November 11, 2016. According to the Debtor's most recently filed Schedule I, the Debtor has three sources of income: retirement income ($1,123 per month), Veterans Affairs benefits ($1,255 per month), and Social Security income ($2,071 per month). On her Schedule J, the Debtor deducts $920 of her Social Security income for "savings for unforeseen expenses."

The Debtor's Chapter 13 plan, as proposed, calls for payments of $1,000 per month for thirty-six months. Among other terms, the plan proposes to pay a secured claim based on a home-improvement loan in full—$14,705.89 with 4.5% interest. For unsecured creditors, the Debtor offers a pool of $8,000 for them to share *pro rata*, which works out to payment of approximately 20% of their claims.

The Trustee objects to the confirmation of the Debtor's plan because, he asserts, the Debtor has not proposed her plan in good faith. Section 1325(a)(3) requires that a Chapter 13 plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). The Code does not define "good

2

faith," so courts have taken it upon themselves to decipher a meaning for the term. In the Eleventh Circuit, courts determine good faith by performing a "totality of the circumstances" review of the case. *See Brown v. Gore (In re Brown)*, 742 F.3d 1309, 1317 (11th Cir. 2014). To assist in that review, the Eleventh Circuit has identified eleven non-exclusive factors:

> (1) the amount of the debtor's income from all sources;
> (2) the living expenses of the debtor and his dependents;
> (3) the amount of attorney's fees;
> (4) the probable or expected duration of the debtor's Chapter 13 plan;
> (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
> (6) the debtor's degree of effort;
> (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;
> (8) special circumstances such as inordinate medical expense;
> (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors;
> (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
> (11) the burden which the plan's administration would place on the trustee.

*Kitchens v. Ga. R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885, 888-89 (11th Cir. 1983) (per curiam) (citing *Ga. R.R. Bank & Trust Co. v. Kull (In re Kull)*, 12 B.R. 654, 659 (S.D. Ga. 1981)). Considering these factors (referred to as the *Kitchens* factors after the name of the case in which the Eleventh Circuit

3

announced them) and all the other circumstances of the case, a court must decide "whether or not…there has been an abuse of the provisions, purpose or spirit of [the Bankruptcy Code]." *Meredith v. Roberts (In re Roberts)*, No. 11-60690, 2013 WL 441378, at *2 (Bankr. S.D. Ga. Jan. 24, 2013) (quoting *In re Kitchens*, 702 F.2d at 888). The debtor bears the burden of proving his good faith by a preponderance of the evidence. *See id.* at *2; *In re Thomas*, 443 B.R. 213, 217 (Bankr. N.D. Ga. 2010) (Murphy, J.); *In re Sweet*, 428 B.R. 917, 920 (Bankr. M.D. Ga. 2010). With these guiding principles in mind, the Court turns to the reasons for the Trustee's objection to confirmation.

In his brief, the Trustee identifies three facts that he believes indicate a lack of good faith in this case: (1) the Debtor has failed to fully disclose how she intends to use the $920 in Social Security income she is holding back every month; (2) the Debtor proposes to "save" $920 every month while only paying unsecured creditors $8,000 *pro rata*; and (3) the Debtor proposes to pay a home-improvement loan in full while only paying unsecured creditors $8,000 *pro rata*. The Court will address each in turn.

(1) The Debtor's Disclosure

The Trustee's first alleged indication of a lack of good faith is the Debtor's failure to provide details concerning how she plans to use the $920 in Social Security income she is excluding from her case. The Trustee argues that the Debtor's mere assertion that she is "saving" the money is not sufficient.

Addressing this ground for the Trustee's objection to confirmation requires consideration of the unique treatment Social Security income receives under the Bankruptcy Code. Though the Eleventh Circuit has not dealt with the issue of Social Security income in a Chapter 13 case, the prevailing view among the courts that have dealt with it is that Social Security income does not need to be paid into a Chapter 13 plan. *See, e.g.*, *Mort Ranta v. Gorman*, 721 F.3d 241, 251 (4th Cir. 2013); *Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120, 1131 (9th Cir. 2013); *Beaulieu v. Ragos (In re Ragos)*, 700 F.3d 220, 226 (5th Cir. 2012); *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1318 (10th Cir. 2012); *Baud v. Carroll*, 634 F.3d 327, 345 (6th Cir. 2011); *In re Thomas*, 443 B.R. at 217; *In re Scott*, 488 B.R. 246, 253 (Bankr. M.D. Ga. 2013).

Reaching this conclusion requires following a straightforward logical path. The path begins with § 1325(b), which requires that a plan provide at least for

5

payment of all of the debtor's "projected disposable income" to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). The Code defines "disposable income" in § 1325(b)(2) as, with some exceptions not relevant here, "current monthly income received by the debtor…less" certain expenses allowed by the Code. 11 U.S.C. § 1325(b)(2); *see also In re Ragos*, 700 F.3d at 223.

The Code defines "current monthly income" broadly as "the average monthly income from all sources that the debtor receives…without regard to whether such income is taxable income…." 11 U.S.C. § 101(10A)(A). However, the next paragraph narrows the definition, noting that current monthly income "excludes benefits received under the Social Security Act." 11 U.S.C. § 101(10A)(B). Therefore, because Social Security income is excluded from current monthly income, which is in turn used to calculate disposable income and a debtor's plan payment, Social Security income is not considered when calculating how much a debtor has to pay into his Chapter 13 plan. *See, e.g.*, *In re Ragos*, 700 F.3d at 223-26.

In the instant case, acknowledging the weight of authority in support of the conclusion just reached, the Trustee concedes that the Debtor is not required to pay all of her Social Security income into the plan. Nevertheless, the Trustee maintains

6

that the Debtor still ought to completely disclose what she does with that money, and her failure to do so suggests a lack of good faith.  The Court disagrees.

The sections of the Code discussed above show a clear intent to protect Social Security income from the bankruptcy process.  What this intent means for the matter at hand—whether the Debtor must provide greater detail of what she intends to do with her Social Security benefits—is that a debtor need not disclose the disposition of Social Security income he does not intend to use toward his plan.

This does not mean that a debtor *cannot* disclose how he is using Social Security income.  For instance, a debtor may use proof of Social Security income to show that his plan is feasible.  *See Mort Ranta*, 721 F.3d at 254 ("[I]n evaluating whether a debtor will be able to make all payments under the plan and comply with the plan, the bankruptcy court must take into account any Social Security income the debtor proposes to rely upon, and may not limit its feasibility analysis by considering only the debtor's 'disposable income.'").  Still, a debtor need not disclose to parties in interest or to the court how he intends to use funds that Congress has expressly allowed him to exclude and that he does not need for the success of his case.

In the instant case, the Debtor's filings indicate that she does not *need* the $920 per month, that is, she can make her plan payment and pay all necessary expenses without it. Consequently, the Debtor proposes to "save" this money. The Court finds that this level of disclosure is not an indication of a lack of good faith. Given Congress's intention to exclude Social Security income from the bankruptcy process and the fact that no party has raised a feasibility challenge to the Debtor's plan, the Court does not need to know more about how the Debtor intends to dispose of this $920 per month. It is enough to know that she has the income and that she intends to exclude it, as the Code allows her to do. Accordingly, the Court finds no lack of good faith in her failure to provide a more thorough explanation of her plans for the Social Security income.

(2) Insubstantiality of Payments

The Trustee contends that the Debtor's proposal to save $920 per month while only paying an $8,000 pool to unsecured creditors indicates a lack of good faith. The Trustee notes that over the life of the Debtor's proposed plan, this arrangement will allow the Debtor to save $33,120. The Trustee concludes that the insubstantiality of the payments to unsecured creditors, when considered in light of the Debtor's total income, precludes a finding of good faith.

8

In support of his position, the Trustee relies on a 2010 case from another court in this District, *In re Thomas*, 443 B.R. 213 (Bankr. N.D. Ga. 2010) (Murphy, J.). In that case, the court faced a debtor proposing to retain $1,352.43 of his Social Security income per month, but proposing no distribution at all for unsecured creditors. *Id.* at 214-15. The court acknowledged that a debtor is not required to pay Social Security income into a Chapter 13 plan, but concluded that this exclusion did not preclude consideration of Social Security income as part of the "totality of the circumstances" test for good faith. *See id.* at 218-19. Ultimately, the court held that "[Social Security income] is income and a debtor should not be allowed to shield all of that income while paying unsecured creditors nothing." *Id.* at 219. Consequently, the court denied confirmation for lack of good faith. *Id.*

Among the cases cited in the Debtor's brief in support of confirmation is *In re Welsh*, 711 F.3d 1120 (9th Cir. 2013), which reaches a different conclusion. In that case, the debtor excluded his Social Security income from his disposable income and proposed to pay less than 10% of his unsecured debt. *Id.* at 1322-23. The trustee objected to confirmation of the plan on good faith grounds. *Id.* at 1323. In addressing the trustee's objection, the Ninth Circuit concluded "that a

9

plan prepared completely in accordance with the very detailed calculations that Congress set forth" is "proposed in good faith." *Id.* at 1131. Thus, "[w]hen a Chapter 13 debtor calculates his repayment plan payments exactly as the Bankruptcy Code and the Social Security Act allow him to, and thereby excludes [Social Security income], that exclusion cannot constitute a lack of good faith." *Id.* at 1132 (alteration in original) (quoting *In re Cranmer*, 697 F.3d at 1319). Other circuit courts have reached a similar conclusion. *See In re Ragos*, 700 F.3d at 227 ("[R]etention of exempt social security benefits alone is legally insufficient to support a finding of bad faith under the Bankruptcy Code."); *In re Cranmer*, 697 F.3d at 1319.

The Court agrees with those courts that have concluded that retaining Social Security income is not sufficient to show a lack of good faith. Indeed, as the Tenth Circuit has noted, to conclude otherwise "would render the Code's express exclusion of [Social Security income]…meaningless." *In re Cranmer*, 697 F.3d at 1319.

Applying that rule in the instant case, the Court finds that the Debtor's retention of $920 of her Social Security income, while paying unsecured creditors approximately 20% of their claims, does not constitute a lack of good faith. The

10

Court acknowledges that the optics of the situation are not pleasant, and that it does raise a specter of unfairness to allow the Debtor to amass over $30,000 in savings while her unsecured creditors receive only $8,000. But that is the way the Code is written, and it is not "bad faith for [the Debtor] to adhere to the provisions of the Bankruptcy Code and, in doing so, obtain a benefit provided by it." *See In re Cranmer*, 697 F.3d at 1319.[1]

(3) Paying the Secured Loan

The Trustee's final ground for objecting to confirmation is based on the Debtor's proposal to pay her home-improvement loan in full, but only pay unsecured creditors $8,000. The Trustee asserts that the Debtor acquired this loan, which the Debtor maintains was for necessary home repairs, near the end of March of 2016, which was less than seven months before she filed her petition. The

---

[1] The Trustee argues that reaching this conclusion is contrary to the goal of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA)—"to help ensure that debtors who *can* pay creditors *do* pay them." *See Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011). However, as the Ninth Circuit noted, that goal is furthered by requiring debtors to undergo the "means test," which involves the calculation of disposable income, which does not include Social Security income. *See In re Welsh*, 711 F.3d at 1133. This Court joins that circuit court in declining "to give greater weight to one of the purposes of BAPCPA by ignoring the explicit language that Congress enacted." *Id.*

11

Trustee contends that paying this loan in full, while providing relatively little for unsecured creditors, shows a lack of good faith.

This argument raises issues related to the tenth *Kitchens* factor: "the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors." *See In re Kitchens*, 702 F.2d at 889. Though paying a secured creditor in full while not paying a substantially similar amount to unsecured creditors does not automatically constitute bad faith, it is a factor to be considered, and a court should take note of the whole of the situation. *See In re Sweet*, 428 B.R. at 921. In that vein, at least one court has concluded that a plan may not be used to finance a "recently acquired jump in lifestyle at the expense of the unsecured creditors." *Id.* (discussing *In re Rice*, 72 B.R. 311 (D. Del. 1987)).

Here, the Court finds that it cannot, with just the information in front of it, conduct the fact-bound inquiry required to resolve this aspect of the Trustee's objection. It is suggestive of a lack of good faith that the Debtor had work done to her home and acquired a loan less than a year before filing her case, and now proposes to pay that loan off in full while paying so little to unsecured creditors. While the Debtor's brief asserts that the home improvements were necessary, the

12

Court cannot take that allegation as sufficient. *See generally McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (per curiam) (declining to consider unsworn statements). The schedules, plan, and briefs do not provide a sufficient basis for the Court to conclude whether the Debtor has acted in good faith concerning the proposed treatment of this loan. Therefore, the Court will reset the confirmation hearing so that the parties may present evidence concerning the acquisition and treatment of the home-improvement loan.

### Conclusion

For the reasons set forth above, it is hereby **ORDERED** that the Trustee's Objection to Confirmation is **OVERRULED** except to the extent discussed above.

**IT IS FURTHER ORDERED** that the confirmation hearing is reset to May 18, 2017, at 2:00 PM, in the Second Floor Courtroom, Lewis R. Morgan Federal Building, 18 Greenville Street, Newnan, Georgia.

The Clerk is **DIRECTED** to serve this Order on the Debtor, the Debtor's counsel, the Trustee, and all other parties in interest.

### END OF DOCUMENT